[Civ. No. 2061.    First Appellate District.—August 25, 1917.]

RANSOME CONSTRUCTION CO. (a Corporation), Respondent, v. MARY E. VON SCHROEDER et al., Appellants.

CONTRACT—REMOVAL OF DEBRIS—COST OF WORK—CONSTRUCTION OF CONTRACT.—Under the terms of a written contract to clear real property from debris resulting from fire, which provided that the work was to be paid for upon cost charges plus ten per cent for superintendence, and that in case of any increase of wages demanded for labor above the amount specified, the charges of the contractor should thereafter be based upon such increased cost of labor, but that if the owners should deem the increase excessive they should have the privilege of stopping all further work, and that the total of the work should not exceed a designated amount, except as to increased cost of labor, the contractor's charge for the entire work is limited to the maximum figure stated in the contract, except for increases in the cost of labor, notwithstanding that the contractor in the performance of portions of the work was subject to the direction of the agents of the owners affecting the amount and detail of the work to be done and the manner of doing it.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. James M. Seawell, Judge.

The facts are stated in the opinion of the court.

Bishop, Hoefler, Cook & Harwood, and A. J. Harwood, for. Appellant von Schroeder.

Felix T. Smith, for Appellant Sprague.

Garret W. McEnerney, and Walter Rothchild, for Appellants Martin et al.

Pringle & Robbins, and William B. Pringle, for Respondent.

RICHARDS, J.—This is an appeal from a judgment in favor of plaintiff, a contractor, for the value of work and labor performed upon the property of the defendants situate in the city of San Francisco, in an effort to clear said property from debris resulting from the fire of 1906. There is

also an appeal from an order denying the defendants' motion for a new trial.

The facts of the case—concerning which there is little dispute—are as follows: The defendants, prior to the date of their contract with the plaintiff, had been joint owners of the property in question, but subsequent to the fire had partitioned it among themselves in severalty. The debris occasioned by the fire covered the entire premises, including the basement. In the month of July, 1906, the owners of the property called for bids for the removal of the debris and clearance of the lot. The Ransome Construction Company responded with a written bid offering to do the work within thirty days, and submitting two alternative propositions as to the price. One of these was an offer to do the entire work for $16,076, the other was to do it for the actual cost to it plus ten per cent on a specified scale of wages for labor. A written contract was finally entered into between the owners and the contractor on July 27, 1906, wherein it was provided that the work was to be done within forty days of the date of the contract, save delays caused by strikes, accident, and other causes beyond the control of the parties, and was to be paid for upon cost charges, plus ten per cent for superintendence and certain other items specified in the agreement, payment for the work done during the preceding week to be made on Monday of each week, while it was in progress, upon statements to be rendered by the contractor and certified by the time-keeper of the owners, the amount of said weekly payments to cover the actual cost of the work done during the preceding week plus five per cent of the amount to be added for superintendence, etc., the balance of five per cent of these latter charges to be paid on full completion of the work. It was provided in the contract that in case of any increase in wages demanded for labor above the amounts specified in the agreement the charges of the contractor should thereafter be based upon such increased cost of labor; but that if the owners should deem such increase excessive they should have the privilege of refusing to accede to the same and of stopping all further work upon the contract, in which case they should immediately pay the amount in full due upon the contract up to the time of such stoppage, and the contract should thereupon cease. There was a further agreement in the contract ''that the total cost of the work . . .

should not exceed the sum of $16,076 except as hereinabove specified.''

The contractor began work under this agreement on July 30, 1906. On August 6, 1906, the teamsters demanded an increase in wages of fifty cents a day, and the laborers demanded an increase of twenty-five cents a day. The contractor at once notified the owners of these demands, and paid the increase demanded until August 10, 1906, when the owners ordered the work suspended, and notified the contractor that they did not approve of the demands of the teamsters or laborers and were unwilling to meet such demands at that time. The strike of teamsters and laborers was general throughout the city, and was followed by conferences between the contractors and the strikers which resulted in the former yielding to the latter's demands for increased wages after about two weeks of negotiation. This result being reported to Mr. Martin, the agent of the owners, he wrote on August 23, 1906, a letter to the contractor undertaking to state what his understanding of the terms upon which the contractor would resume work upon the premises was as a result of a recent conversation between himself and the contractor's officers, in which the proposed increase of wages and consequent increase in the fixed cost to the owners, viz., the sum of $16,076, were discussed, together with an extension of time required on account of the delay, and also certain other matters of detail connected with the progress of the work. In this first letter of Mr. Martin he requested the contractor to confirm his understanding of the various matters referred to therein as soon as possible, in order that he might submit the matter to the owners and obtain their sanction before giving instruction to proceed with the work. The contractor did not reply to this letter with any written confirmation of its terms, but its officers responded to repeated requests on the part of Mr. Martin for such confirmation with the assurance that a written confirmation would be sent, and in one instance at least with a statement that it had been sent. Not having received such confirmation up to September 6, 1906, Mr. Martin wrote another letter to the contractor on that date, calling its attention to the fact that he had on several occasions endeavored to ascertain when and under what conditions it would resume work, and restating in detail the substance of his former letter, and concluding with these words:

"If this understanding is correct kindly confirm the same in writing as soon as possible, and you can take this letter as our consent to proceed with the operations, these terms being satisfactory." The contractor made no written reply to either of these letters, but on September 7, 1906, resumed work upon the property. From time to time thereafter Mr. Martin and Mr. Wallis, agents of the owners, requested written confirmation of Mr. Martin's letters, and was told on each occasion that a letter to that effect would be or even had been sent. Between September 7th and October 24th the work went on. Weekly bills for progress payments according to the new labor schedule were presented, and these were regularly paid up to October 5th, during which time the contractor received a sum in excess of seven thousand dollars on account of the work since its resumption. During the period between September 20th and October 18th Mr. Martin—who chiefly acted for the owners in respect of this matter—was absent from the state; but shortly after his return and on October 22d he caused a letter to be written to the contractor requesting an interview with its officials before any more bills were paid. Mr. Crummey, representing the contractor, called at Mr. Martin's office on October 24th, when a heated interview ensued, Mr. Crummey demanding the payment of the bills, and Mr. Martin insisting upon a written confirmation of the terms of the contract as embodied in his letters. The result of this conference was an immediate cessation of work by the contractor and the later institution of the present action.

The first and the controlling proposition presented upon these appeals relates to the construction to be placed upon the written contract between the parties, with special reference to the question as to whether it provides by its terms that the contractor shall complete the specified work for a price within the maximum sum of $16,076, or such further sum as these figures might be increased by acceding to labor demands for increased wages. On the part of the respondent it is earnestly contended that the contract is not susceptible of this construction for the reason chiefly that the contractor, in the performance of its portions of the contract, was subject to the direction of the agents of the owners in certain particulars, which are claimed to essentially affect the amount and detail of the work to be done and the manner of doing it, and to

also affect its cost and the time within which it was to be performed. The owners on the other hand contend that the contract, construed in the light of the circumstances attending its creation, clearly contemplates that the work of clearing the premises of such of the material and debris as the owners should direct to be removed was to be completed at a cost to them within the maximum figure stated in the contract, which amount was only to be increased to an extent necessitated by their accession to demands involving the increased cost of labor.

We are constrained to adopt this latter conclusion.

The admitted facts of the case show that prior to the making of the agreement in question the owners advertised for bids for the removal of debris and clearing of the lot in question, and that in response to this advertisement the plaintiff in this action presented a written proposal, embracing the clearance of the debris, of all walls to the sidewalk level, and the removal of everything to the basement floor, for the sum of $16,076, and offering to do the work within thirty days of the acceptance of its bid. There was also an alternative proposition to do the work upon a specified percentage basis. The contract which within a few days followed this bid is the one under construction here. It enters more into detail as to what work the contractor was to do, and leaves with the owners of the property a certain amount of discretion in the matter of directing how much of the brick and iron debris the contractor was to remove; but this discretion when exercised could clearly have had no other effect than to lessen rather than increase the amount of work which the contractor was to perform in the clearance of the lot, and hence cannot be construed as changing the original intent of the parties that the work of clearing the lot of its debris was to be completed under the terms of the contract within the limiting specified cost to the owners. The fact that the contract also contained substantially the alternative proposition submitted by the contractor in his bid can only be construed as so included for the purpose of giving the owners the benefit of a possible completion of the work within the maximum sum specified in the contract, and expressly therein agreed to be the amount which was to cover the total cost of the work except as the same might be increased by the enforced increase in labor charges. Under the contract as thus to be

construed the work of clearance began and continued until interrupted by the demands of the teamsters and laborers for an increase in wages, and by their strike to enforce such increase. This caused a cessation of the work for about a fortnight; but this was regarded by neither party as an abandonment of the contract. When the labor troubles were adjusted upon the basis of a specified increase in wages the contractor notified the agent of the owners of the amount of such increase, and desired to learn the wishes of the owners as to resumption of the work. A few days thereafter Mr. Martin wrote the contractor his first letter above referred to, stating his understanding of what the increase in labor charges was to be, and also undertaking to set forth his interpretation of the terms of the contract with respect to the effect of such increase upon the total contract price for the completion of the work. Not receiving a written reply to this letter Mr. Martin about two weeks later wrote another letter to the contractor, repeating the interpretation of the contract as set forth in his former letter, and requesting a written confirmation of the correctness of such interpretation. This latter letter informed the contractor that it was to constitute the owners' consent to the resumption of the work upon its specified terms. The contractor did not respond with the required confirmation in writing but he at once resumed work upon the property. The appellants herein lay too much stress upon the necessity of a confirmation in writing of Mr. Martin's two letters. The conduct of the contractor in assuring Mr. Martin that such confirmation would be forthcoming, coupled with its prompt renewal of the work upon receipt of his last letter, would in our opinion amount in effect to such confirmation of Mr. Martin's interpretation of the contract if such were requisite; but since his interpretation of the contract as to the maximum cost to the owners of completing the specified work was in accord with our construction of the original agreement between the parties it was sufficient for the contractor to resume the work upon receipt of Mr. Martin's letter to constitute an acceptance of its terms. Having recommenced the work upon the property in response to the owners' directions so to do, both parties were bound to live up to the letter and spirit of their original agreement, as modified by the accepted increase in the cost of labor. During the period between September 7 and October 24, 1906, the

contractor went ahead with the work, and regularly rendered weekly bills to the owners in accordance with the terms of the contract but upon the basis of the increased cost of labor. These bills were regularly paid up to October 8th; but the bills rendered upon that date and for the two following weeks were not paid. The total amount paid the contractor from the inception of the work up to and including October 1, 1906, amounted to $9,548.36. The bills .presented for the three weeks' work thereafter amounted to $7,265.25. These two amounts of payments made and due upon the work since its inception aggregated on October 22, 1906, the sum of $16,813.61, a sum considerably in excess of that originally contemplated and agreed to between the parties as the entire cost of the completed work, and a sum also perilously near the total sum to be paid under the contract upon the basis of the increase in the cost of labor, which increase, according to the findings of the court, would up to that date have amounted to $1,153.09. Upon any view of the evidence before us the work was still far from completion; and it was both natural and proper that the owners of the property should insist upon a conference with the contractor before the payment of bills which would thus almost exceed the total allowance for the completed work while said work was but little more than half completed. Such a conference was requested and held between the officials of the contractor and the agents of the owners on October 24, 1906, by which date the claims of the contractor had been still further increased by approximately two thousand dollars. The evidence is somewhat conflicting as to what occurred at this conference; but the proofs are practically undisputed that the owners then and there offered to pay the back bills of the contractor to date, conditioned upon the latter's acceptance of the owners' interpretation of the terms of the original contract as embodied in the letters of Martin; and that the representatives of the contractor at that conference not only refused to do this but expressly asserted that said contract was no longer in effect. This asseveration was in exact accord with a letter of the contractor to the owners under date of September 26, 1906, which amounted to a substantial repudiation of the contract, and which, while written and signed by its officials, was never delivered to the owners, and only came to light upon the trial of the case. The undisputed proofs are further to

the effect that the contractor did on that day or the following day cease and never thereafter resumed work upon the premises. The undisputed evidence also discloses that the owners some time later completed the work of clearing the lot at a cost in excess of ten thousand dollars. Notwithstanding these facts the trial court has found that the contractor did not on October 24, 1906, repudiate the contract under which the work had thus far proceeded.

Upon the foregoing state of the evidence we are of the opinion that this finding of the trial court cannot be sustained; and for a like reason we are satisfied that the conclusion of the trial court that the defendants' qualified refusal to pay any more of the plaintiff's bills on October 24, 1906, amounted to an actionable breach of the agreement upon their part is not justified by the proofs in the case.

It follows from these conclusions that the plaintiff was not entitled to begin and maintain an action upon *quantum meruit* at the time this suit was instituted.

This view obviates the necessity of a consideration of the asserted errors of law committed by the trial court during the trial of the action, and also insisted upon by the defendants upon these appeals.

The judgment and order are reversed.

Beasly, J., *pro tem.*, and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 24, 1917, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 18, 1917.